UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

JOE HAND PROMOTIONS, INC.,

                 Plaintiff,

        - vs -

CONNIE M. JOHNSON,
d/b/a THE WATERHOLE BAR AND
GRILL and
d/b/a WATERING HOLE,

                 Defendant.

CASE NO.:  6:19-cv-00472

## COMPLAINT

Plaintiff, JOE HAND PROMOTIONS, INC., by and through its attorney, as and for its Complaint against the Defendant, CONNIE M. JOHNSON, *doing business as* THE WATERHOLE BAR AND GRILL and *doing business as* WATERING HOLE, upon information and belief, alleges as follows:

### THE PARTIES

1.     Plaintiff, JOE HAND PROMOTIONS, INC. is a corporation organized and existing under the laws of Pennsylvania with its principal place of business located at 407 East Pennsylvania Blvd., Feasterville, Pennsylvania 19053.  Plaintiff held the exclusive commercial distribution rights to the public exhibition of the audiovisual presentation of the *Floyd Mayweather Jr. vs. Conor McGregor* boxing match, including all undercard bouts and commentary, on Saturday, August 26, 2017 (the "Program").

2.      Defendant, CONNIE M. JOHNSON

    a.      is an individual who resides in the State of Texas,

    b.      may be served at 302 N. Judge Hailey Dr., Lott, Texas 76656 or wherever found,

    c.      conducted business as "The Waterhole Bar and Grill" on the date of the Program,

    d.      conducted business as "Watering Hole" on the date of the Program,

    e.      owned, operated, maintained, and controlled the commercial establishment known as The Waterhole Bar and Grill/Watering Hole located at 902 Monroe St., Marlin, Texas 76661 (the "Establishment") on the date of the Program.

    f.      owned the Establishment as her sole proprietorship on the date of the Program,

    g.      had a right and ability to supervise the activities of the Establishment on the date of the Program, and

    h.      had an obvious and direct financial interest in the activities of the Establishment on the date of the Program.

<u>JURISDICTION AND VENUE</u>

3.      Jurisdiction is proper as this action arises under the copyright laws of the United States.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 (federal question) and 1338(a) (copyright) as this civil action is brought under the Copyright Act of the United States, 17 U.S.C. § 101, et seq. and the Communications Act of 1934, as amended, 47 U.S.C. § 553 (generally referred to as "Cable Piracy") and 47 U.S.C. § 605 (generally referred to as "Satellite Piracy").

4.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(a) and (b) and 1400(a) because a substantial part of the events giving rise to the claims occurred in this District and Defendant resides in this District.

FACTS

5.      Plaintiff repeats, re-alleges, and incorporates by reference each and every allegation and averment set forth in the above paragraphs of this Complaint with the same force and effect as if the same were more fully set forth at length herein.

6.      Plaintiff is a company that specializes in distributing and licensing premier sporting events to commercial, non-residential establishments including bars, restaurants, clubhouses, shops, and similar locations.  By written agreement with the promoters of the *Floyd Mayweather Jr. vs. Conor McGregor* boxing event, Plaintiff was granted the exclusive commercial, non-residential distribution rights to distribute the public exhibition of the audiovisual presentation of the Program.

7.      By written agreement with the owner of the registered copyright [PA 2-066-333] of the Program, Plaintiff was assigned ownership of the right to distribute [17 U.S.C. § 106(3)] and authorize the public performance [17 U.S.C. § 106(4)] of the Program.

8.      The Program garnered widespread media coverage, public interest, and was reported to be the most anticipated pay-per-view event in history.[1] Plaintiff licensed the Program to over 6,000 commercial establishments nationwide authorizing them to exhibit the Program to their patrons, customers, members, and/or guests granting such authorization after the payment of a commercial license fee to Plaintiff, which fee was determined by the capacity of the establishment.

---

[1] *See Mayweather, McGregor poised for history-making fight,* Reuters, https://www.reuters.com/article/us-boxing-mayweather-mcgregor/mayweather-mcgregor-poised-for-history-making-fight-idUSKCN1B52L8 (last visited April 30, 2019).

9.     The Program was legally available to Defendant for exhibition in her Establishment by obtaining proper authorization from Plaintiff only after paying the commercial, non-residential rate to Plaintiff.  Defendant, however, chose not to contract with Plaintiff and pay the proper commercial, non-residential license fee to Plaintiff.  Instead, Defendant, herself or through her agents, servants, and/or employees, took affirmative steps to circumvent the commercial licensing requirement and unlawfully obtained the Program through an unauthorized cable signal, satellite signal, and/or internet stream.

10.     In an effort to avoid paying the proper commercial license fees to Plaintiff, commercial locations, among other methods, obtained the Program through the illegal misuse of cable and satellite service by: (1) intercepting and redirecting cable or satellite service from a nearby residence, (2) registering their business location as a residence, (3) physically moving a cable or satellite receiver from a residence to their business, and/or (4) obtaining the Program in violation of the terms of their television service provider agreement.

11.     In addition to the above methods, commercial locations also exploited restricted online access to the Program in order to avoid paying the proper commercial license fees to Plaintiff.  Consumers could stream the Program through a limited number of legitimate online distributors for a maximum retail price of $99.99, but only for *non-commercial use*.  The website of each distributor carried clear language limiting use of an online stream to residential, personal, and/or non-commercial use only.  Undeterred, commercial locations would purchase the Program for viewing on a personal device or in a residence, then proceed to link this device to the establishment's television screen(s) to unlawfully exhibit the Program commercially.

12.     Upon information and belief, Defendant, herself and/or through her agents, servants, and/or employees, willfully engaged in one or more of the above illegal acts to receive the Program for free or at a nominal cost while Plaintiff's legitimate customers paid several thousand dollars.  Defendant knew, or should have known, her receipt and exhibition of the Program at her establishment was not authorized.

13.     Upon information and belief, Defendant, herself and/or through her agents, servants, and/or employees, intentionally pirated the Program for the sole purpose of her own economic gain. The Program was exhibited in Defendant's Establishment for the commercial purpose of attracting paying customers, patrons, members, and guests, thereby wrongfully benefiting financially by infringing upon Plaintiff's rights in the Program.

14.     Defendant did not have license, authorization, permission, or consent from Plaintiff to exhibit the Program in the Establishment.

15.     As exclusive licensee and copyright assignee of the Program, Plaintiff has standing and capacity to bring this action in its own name against Defendant for violations of both the Communications Act and the Copyright Act.

COUNT I:  SATELLITE [47 U.S.C. § 605] AND CABLE [47 U.S.C. § 553] PIRACY

16.     Plaintiff repeats, re-alleges, and incorporates by reference each and every allegation and averment set forth in the above paragraphs of this Complaint with the same force and effect as if the same were more fully set forth at length herein.

17.     Defendant's exhibition of the Program was accomplished through the interception and/or receipt of an interstate satellite signal, or in the alternative, through a cable signal.

18.     Defendant's wrongful actions in connection with the unauthorized exhibition of the Program, as described above, violate 47 U.S.C. § 605.  By reason of Defendant's violation of 47 U.S.C. § 605, Plaintiff has standing and capacity to bring a private right of action.

19.     Plead in the alternative, Defendant's wrongful actions in connection with the unauthorized exhibition of the Program, as described above, violate 47 U.S.C. § 553 and, by virtue of same, Plaintiff has standing and capacity to bring a private right of action.

20.     Defendant's wrongful actions in connection with the unauthorized exhibition of the Program, as described above, violate (in the alternative to the extent necessary) 47 U.S.C. §§ 605 or 553.

21.     Accordingly, Plaintiff is entitled to judgment in its favor and against Defendant for statutory damages, in the discretion of this Court, plus interest, costs, and attorney's fees pursuant to 47 U.S.C. § 605 or, alternatively, pursuant to 47 U.S.C. § 553.

## COUNT II:  COPYRIGHT INFRINGEMENT

22.     Plaintiff repeats, re-alleges, and incorporates by reference each and every allegation and averment set forth in the above paragraphs of this Complaint with the same force and effect as if the same were more fully set forth at length herein.

23.     Defendant's unauthorized distribution and public performance of the Program through any means including, without limitation, cable, satellite, or internet stream, violate 17 U.S.C. §§ 106 and 501.

24.     Defendant's acts of infringement were not only willful, intentional, and purposeful, but also in complete disregard of and indifference to Plaintiff's rights.

25.     Accordingly, Plaintiff is entitled to judgment in its favor and against Defendant for statutory damages, in the discretion of this Court, plus interest, costs, and attorney's fees pursuant to 17 U.S.C. § 505.

<u>PRAYER</u>

WHEREFORE, Plaintiff prays for judgment in favor of Plaintiff and against Defendant as follows:

a.     for statutory damages, in the discretion of this Court, of up to the maximum amount of $110,000.00 for the willful violation of 47 U.S.C. § 605 committed for the purpose of commercial advantage or, alternatively, for statutory damages, in the discretion of this Court, of up to the maximum amount of $60,000.00 for the willful violation of 47 U.S.C. § 553 committed for the purpose of commercial advantage,

b.     for Plaintiff's attorney's fees, interest, and costs of suit pursuant to 47 U.S.C. § 605(e)(3)(B)(iii) or, alternatively, pursuant to § 553(c)(2)(C),

c.     for statutory damages, in the discretion of this Court, of up to the maximum amount of $150,000.00 pursuant to 17 U.S.C. § 504(c) for the willful violation of 17 U.S.C. § 501,

d.     for Plaintiff's attorney's fees, interest, and costs of suit pursuant to 17 U.S.C. § 505, and

e.     for such other and further relief to which Plaintiff may be entitled.

Respectfully submitted,

JAMIE KING, P.C.

*/s Jamie King*
Jamie King
Attorney-in-Charge
State Bar No. 24043755
P.O. Box 5757
Kingwood, Texas 77325
(832) 584-0106 Telephone
(888) 247-0443 Facsimile
jamie@jamiekingpc.com

ATTORNEY FOR PLAINTIFF,
JOE HAND PROMOTIONS, INC.