**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| **JOE HAND PROMOTIONS, INC.,** | § | |
| *Plaintiff* | § | |
| | § | **W-19-CV-00472-ADA** |
| **-vs-** | § | |
| | § | |
| **CONNIE M. JOHNSON, AS OWNER OF THE** | § | |
| **WATERHOLE BAR AND GRILL/WATERING** | § | |
| **HOLE;** | § | |
| *Defendant* | § | |

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Before the Court is Plaintiff Joe Hand Promotions, Inc.'s ("Joe Hand") Motion for Final Summary Judgment filed on October 28, 2021 (the "Motion"). ECF No. 17. Defendant Connie M. Johnson did not respond. The Court has considered the motion, subsequent briefing, case files, and applicable law. For the reasons set forth below, the Court **GRANTS** the motion.

## I.    BACKGROUND

On August 26, 2017, two internationally known fighters, Floyd Mayweather Jr. and Connor McGregor, headlined a highly anticipated boxing match. Joe Hand, a company specializing in the commercial licensing of entertainment and sports, contracted with Showtime Networking, Mayweather Promotions, and Maymac LLC to purchase a licensing agreement for the fight. Showtime Networking owned the Copyright No. PA 2-066-333 for the event; Mayweather Promotions and Maymac LLC were promoting companies acting on behalf of the interests of the fighters. As part of the contract, Joe Hand obtained exclusive rights to distribute and authorize public performance of the fight.

Joe Hand distributed the fight to both residential viewers and commercial businesses. Residential addresses could purchase the ticket for $99.95. In contrast, Joe Hand set a price scale

for commercial businesses contingent on their building's maximum occupancy per fire code. The price scale ranged between $3,700 for businesses that could hold up to one hundred patrons and $15,700 for businesses that could hold up to five hundred patrons. ECF No. 17-5. Joe Hand maintains that it was a violation of terms and unauthorized exhibition of the fight whenever a commercial business purchased the pay-per-view using a residential viewing pass.

The Waterhole Bar and Grill (the "Watering Hole") was one of the many bars that chose to stream the fight. Johnson, the owner of the establishment, describes the Watering Hole as a "community bar which served on average 10-20 people per day three days per week." ECF No. 6. Although the Watering Hole was a small establishment, it was a licensed business in McLennan County, Texas. In January 2016, the Texas Alcohol and Beverage Commission issued a permit for the Watering Hole to serve alcohol up to 14% ABV. ECF No. 17-1 at 2. It is indisputable that Johnson was required to purchase a commercial license for the fight as the Watering Hole was a registered business. Instead, her friends and family members "chipped in to pay the $100.00 [residential] fee." ECF No. 6. Moreover, in the days before the August 26, 2017 streaming, the Watering Hole Facebook page promoted the fight on three separate occasions. The posts included advertisements such as "cold beer, the fight, and some good food." ECF No. 17-8 at 3.

As a commercial licensing agency, Joe Hand suffers from piracy and the resulting lost profits from the unauthorized display of its copyrighted sports events. ECF No. 17-2 at 3. To prevent losses and deter unlicensed broadcasts, Joe Hand hired auditors to gather evidence of illegal streaming of the fight. On the night of the event, an auditor hired by Joe Hand counted between fifty-one and fifty-five people in the Watering Hole. ECF No. 17-6 at 1. The auditor also attached a photo of the fight's first round streaming on a TV in the corner of the bar. ECF

No. 17-6 at 3. Further, the auditor included pictures of the Watering Hole's full parking lot and videos taken inside the bar. ECF No. 17-6 at 4.

On August 15, 2019, Joe Hand filed a complaint for unauthorized publication and copyright infringement in violation of 47 U.S.C. § 605. Johnson submitted an Answer, clearly acting pro se, on November 14, 2019. In the Answer, Johnson asserted that only twenty to twenty-five people were present in the bar and that Sling TV, the cable provider, assured her that she was within her rights to display the fight. ECF No. 6. Since the November letter, Johnson has not submitted any other filings and has not responded to any of Joe Hand's attempts to conference. Critically, Johnson failed to respond to a request for admissions ("RFAs") sent via USPS-certified mail on February 5, 2021. The RFAs and a follow-up letter indicating the consequences for a failure to respond were sent to both the address of the Watering Hole and Defendant Johnson's P.O. Box. Importantly, the documents were sent to the same P.O. Box address as listed on Johnson's Answer. Joe Hand now moves for summary judgment pursuant to Federal Rule of Civil Procedure 56.

## II.    LEGAL STANDARD

### A. Summary Judgment

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see Allen v. Hays*, 812 F. App'x 185, 189 (5th Cir. 2020); *see also Meadaa v. K.A.P. Enters., L.L.C.*, 756 F.3d 875, 880 (5th Cir. 2014). "Substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is only genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In seeking summary judgment, the moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *accord Narro v. Edwards*, 829 F. App'x 7, 10 (5th Cir. 2020). If the moving party meets this burden, the nonmoving party must come forward with specific facts that establish the existence of a genuine issue for trial. *Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc.*, 738 F.3d 703, 706 (5th Cir. 2013) (quoting *Allen v. Rapides Parish Sch. Bd.*, 204 F.3d 619, 621 (5th Cir. 2000)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Hillman v. Loga*, 697 F.3d 299, 302 (5th Cir. 2012) (internal quotation marks omitted).

In deciding whether a fact issue has been created, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Kevin M. Ehringer Enters. v. McData Servs. Corp.*, 646 F.3d 321, 325 (5th Cir. 2011) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). However, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *United States v. Renda Marine, Inc.*, 667 F.3d 651, 655 (5th Cir. 2012) (quoting *Brown v. City of Hous.*, 337 F.3d 539, 541 (5th Cir. 2003)).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), ***admissions***, interrogatory answers, or other materials." FED. R. CIV. P. 56(c)(1) (emphasis added). Thus, admissions can be an appropriate

basis for granting summary judgment, whether express or by default. *In re Carney*, 258 F.3d 415, 420 (5th Cir. 2001).

### B. Copyright Infringement

Copyright infringement is committed by "anyone who violates any of the exclusive rights of the copyright owner . . ." 17 U.S.C. § 501. A plaintiff generally must prove two elements to establish infringement: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original*." BWP Media USA, Inc. v. T & S Software Assocs., Inc.*, 852 F.3d 436, 439 (5th Cir. 2017) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). Willful infringement requires that the plaintiff show "(1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of 'reckless disregard' for, or 'willful blindness' to, the copyright holder's rights." *Berg v. Symons*, 393 F. Supp. 2d 525, 539 (S.D. Tex. 2005) (quoting *Island Software and Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 263 (2d. Cir. 2005)).

Copyright infringement is a strict liability offense, meaning "[i]ntention to infringe is not essential under the [Copyright] Act." *Buck v. Jewell-LaSalle Realty co.*, 283 U.S. 191, 198 (1931); *see also Fed'n of State Massage Therapy Bds. v. Mendez Master Training Ctr., Inc.*, 393 F. Supp. 3d 557, 573 (S.D. Tex. 2019) ("Copyright infringement is a strict liability tort and plaintiffs do not need to prove a defendant's mental state to prosecute a claim.") (quotation marks omitted); *Microsoft Corp. v. Software Wholesale Club, Inc.*, 129 F. Supp. 2d 995, 1002 (S.D. Tex. 2000) ("Neither lack of knowledge nor intent is a defense to a claim of copyright infringement."); *Playboy Enters., Inc. v. Webbworld, Inc.*, 968 F. Supp. 1171, 1174 (N.D. Tex. 1997) ("The copyright owner need not prove knowledge or intent on the part of the defendant to establish liability for direct copyright infringement."); *see also* 4 Melville B. Nimmer & David

Nimmer, Nimmer on Copyright § 13.08 (2006) ("In actions for statutory copyright infringement, the innocent intent of the defendant will not constitute a defense to a finding of liability.").

"If a copyright has been infringed, the owner may elect to recover either actual damages or statutory damages. Under 17 U.S.C.A. § 504(c)(1), statutory damages for nonwillful infringement can range from no less than $750 to no more than $30,000 for each infringed work." *Berg v. Symons*, 393 F. Supp. 2d at 539. Section 504 of title 17 of the United States Code provides:

> In a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000. In a case where the infringer sustains the burden of proving, and the court finds, that such infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright, the court in its discretion may reduce the award of statutory damages to a sum of not less than $200.

Under this framework, the Court must address whether Johnson infringed and, if so, whether enhanced damages are appropriate and at what amount.

## III.    ANALYSIS

### A.  No Genuine Issue of Material Fact

Joe Hand argues that "Defendants' unauthorized public exhibition of the Event in her commercial establishment violated Plaintiff's rights granted under 17 U.S.C. § 106, including § 106(3) (distribution) and § 106(4) (public performance)." ECF No. 17 at 11.In support, Joe Hand provides the Copyright Registration and the Commercial Licensing Agreement to prove ownership of the copyright in question. ECF Nos. 17-3, 17-4. These exhibits show that Joe Hand was the holder of a valid copyright for the fight on August 26, 2017. *See* 17 U.S.C. § 101 ("A transfer of copyright ownership is an assignment, mortgage, exclusive license, or any other

conveyance, alienation, or hypothecation of a copyright or of any of the exclusive rights comprised in a copyright….").

Joe Hand also satisfies the second element of an infringement claim: proving an original element of the copyrighted work was copied. By failing to respond to the RFAs sent by Joe Hand, Johnson, by default, admits to displaying the fight illegally. *See Joe Hand Promotions, Inc. v. Bella's Bar & Grill LLC*, No. 1:19-CV-00140, 2020 WL 6585717, at *1 (S.D. Tex. Nov. 9, 2020) ("The Defendants' failure to object or respond to requests for admissions under Federal Rule of Civil Procedure 36 results in those facts being conclusively established."); *see also Am. Gen. Ins. Co. v. Whitaker*, 971 F.3d 539, 540 (5th Cir. 2020) (finding that the defendant's failure to respond, withdraw, or amend the RFAs resulted in the admissions being factually conclusive). Johnson, thus, admitted that neither she nor anyone else had an agreement with Joe Hand to broadcast the fight and that she knew that the Watering Hole did not obtain the commercial exhibition rights to the fight. ECF No. 17-9 at 2–3. These deemed admissions are bolstered by the pictures taken inside the bar, the Facebook posts promoting the event, and Johnson's own Answer in which she admitted to purchasing a residential pay-per-view broadcast. The Copyright Act gives an owner the exclusive right to reproduce the copyrighted work and display it publicly. *BWP Media*, 852 F.3d at 439 (citing 17 U.S.C. § 106(1), (5)). Here, Johnson infringed upon Joe Hand's rights as the copyright assignee.

Further, Joe Hand maintains that the copyright infringement committed by the Watering Hole was willful. To prove willful infringement, "the plaintiff must show (1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of 'reckless disregard' for, or 'willful blindness' to, the copyright holder's rights." *Berg v. Symons*, 393 F. Supp. 2d at 539 (quoting *Island Software and Computer Serv., Inc. v. Microsoft Corp.*,

413 F.3d 257, 263 (2d Cir. 2005)); *accord Zhigalov v. Costilla*, No. 4:21-CV-087, 2021 WL 2662240, at *3 (E.D. Tex. June 29, 2021). Joe Hand argues that the deemed admissions alongside the Facebook marketing posts are sufficient evidence to show that Johnson knew of the infringement.  Absent evidence establishing actual knowledge of infringement, a plaintiff can still demonstrate willfulness by "proffering circumstantial evidence that gives rise to an inference of willful conduct." *Island Software*, 413 F.3d at 264; *accord L.A. Printex Indus., Inc. v. Doe*, 543 F. App'x 110, 111 (2d Cir. 2013).

Johnson's answer states, "The Waterhole was a small community bar which served on average 10-20 people per day three days per week. We obtained and [*sic*] internet cable service through Sling TV whom assured us that we were within our rights to use this service in this capacity." ECF No. 6. However, Johnson subsequently failed to respond to Joe Hand's RFAs 26–30, which state:

> 26.   YOU knew that the ESTABLISHMENT did not obtain the commercial exhibition rights to the PROGRAM from JHP.
>
> 27.   YOU knew that the broadcast of the PROGRAM at the ESTABLISMENT was not authorized by JHP.
>
> 28.   YOU willfully broadcasted the PROGRAM at the ESTABLISMENT.
>
> 29.   YOU advertised the broadcast of the PROGRAM at the ESTABLISMENT.
>
> 30.   YOU participated in the broadcast of the PROGRAM at the ESTABLISMENT.

ECF No. 17-9 at 3. Per the admissions, Joe Hand has conclusively established that Johnson's infringement was willful. The only information this Court has seen that contradicts these admissions falls within Johnson's Answer. *See* ECF No. 6 (stating that she had cleared the viewing party with Sling TV and was assured she was within her rights). Pleadings, however, are

not evidence and Johnson must, by her own affidavits, depositions, answers to interrogatories, or admissions, designate specific facts that illustrate a genuine issue of material fact for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075, 1079 (5th Cir. 1994) (stating that the plaintiff must go beyond the pleadings and that the court is "not free to amend the plaintiffs' pleadings or to assume facts that might be proved but are not established by the record"); *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (stating that defendant relied, in part, on his pleadings, but "[the court's] inquiry, however, is limited to the summary judgment record" and "pleadings are not summary judgment evidence"). In sum, there is no genuine issue of material fact, and Joe Hand is entitled to judgment as a matter of law against Johnson for willful copyright infringement.

## B.  Damages

Having demonstrated copyright infringement, Joe Hand has proven its right to receive statutory damages. 17 U.S.C. § 504(c)(1). Where the Court finds that an infringement was committed willfully, it may, in its discretion, award damages to a sum of not less than $750.00 and not more than $150,000.00 per work. 17 U.S.C. § 504(c)(2). Statutory damages under the Copyright Act are not solely intended to approximate actual damages but also serve other purposes including deterrence. *Energy Intelligence Grp., Inc. v. Kayne Anderson Capital Advisors*, *L.P.*, 948 F.3d 261, 274 (5th Cir. 2020). Thus, Joe Hand asks for statutory damages of $18,500.00, five times the original licensing price for a business the size of the Watering Hole.

The Court is given wide discretion when calculating damages. However, many courts have elected an amount between a three- to five- multiplier range of the original licensing fee. *Bella's Bar*, 2020 WL 6585717, at *6; *see, e.g.*, *Controversy Music v. Down Under Pub Tyler, Inc.*, 488 F. Supp. 2d 572, 578–79 (E.D. Tex. 2007) (awarding about three-and-a-half times the

original licensing fee); *WB Music Corp. v. Big Daddy's Ent., Inc.*, No. EP-05-CA-267-PRM, 2005 WL 2662553, at *5 (W.D. Tex. Oct. 18, 2005) (awarding "between four to five times the amount of licensing fees owed by Defendants, a ratio within the bounds followed by courts addressing similar cases"); *Broad. Music, Inc. v. Barflies, Inc.*, No. CIV.A. 03-304, 2003 WL 21674470, at *2 (E.D. La. July 16, 2003) (awarding damages four times the licensing fees); *Broad. Music, Inc. v. R Bar of Manhattan, Inc.*, 919 F. Supp. 656, 660 (S.D.N.Y. 1996) (awarding damages "approximately five times what BMI license fees would have been"); *Broad. Music, Inc. v. DeGallo, Inc.*, 872 F. Supp. 167, 170 (D.N.J. 1995) (awarding damages "approximately five times the license fee"); *Golden Torch Music Corp. v. Pier III Cafe, Inc.*, 684 F. Supp. 772, 774 (D. Conn. 1988) (awarding more than five times the license fee).

The Watering Hole has been closed since October 2019 and the business seemingly received minimal profit from displaying the fight, assumedly charging $5 entry fees for approximately fifty to sixty individuals. *See* ECF No. 17-8 at 3. In determining a just amount of enhancement, the Court considers the nature of the business, Defendant's current status, Defendant's capacity at the time of the infringement, whether communications occurred pre-suit between the parties, and the needed escalation to achieve deterrence. *See Broadcast Music v. Tex Border Mgmt.*, 11 F. Supp. 3d 689, 697–98 (N.D. Tex. 2014). The Court finds that enhanced damages are unnecessary to illustrate to Defendant and others similarly situated "that it is more costly to infringe than to obey copyright laws." *Id.* at 698. Thus, the Court awards Defendant damages in the amount of $3,700.00.

Under the Copyright Act, Johnson is individually liable for the infringement. A defendant may be directly liable when they participated in the infringing activity or had the right and ability to supervise the infringing activity and also had a direct financial interest in the activities. *Dagel*

*v. Resident News, LLC*, No. 3:11-CV-663-L, 2012 WL 2068727, at *5 (N.D. Tex. June 8, 2012) (citing *Broad. Music, Inc. v. Hobi, Inc.*, 20 F.3d 1171, 1994 WL 144812, at *2 (5th Cir. Apr. 8, 1994). In her Answer, Johnson admits to participating in the infringement: "this is the only time we had ever rented a pay-per-view event." ECF No. 6. Further, as the owner of the bar, Johnson had a financial interest in marketing the event and likely made at least a slight profit from patrons attending the bar to watch the fight. There is no issue of fact as to Johnson's liability for the infringement.

### C. Attorneys' Fees

Additionally, Joe Hand asks for attorney fees and costs under 17 U.S.C. § 505. "Although attorney's fees are awarded in the trial court's discretion, they are the rule rather than the exception and should be awarded routinely." *Micromanipulator Co. v. Bough*, 779 F.2d 255, 259 (5th Cir. 1985).

Still, the award is discretionary. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533 (1994). In the instant case, Johnson filed her Answer on November 14, 2019, then failed to hire an attorney and refused to attempt litigation as a *pro se* defendant. By not responding to any of Joe Hand's attempts to conference post-Answer, Johnson is responsible for the lengthy two-and-a-half-year lifespan of this case. Thus, the Court finds an award of attorneys' fees and costs is warranted.

A party seeking attorneys' fees bears the burden of establishing that the number of hours expended was reasonable and evidenced by adequately recorded time records. *United Healthcare Servs., Inc. v. Next Health, LLC*, No. 3:17-CV-00243-E-BT, 2022 WL 992744, at *1 (N.D. Tex. Apr. 1, 2022) (citing *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993)). Accordingly, Joe Hand must submit an affidavit detailing reasonable attorneys' fees and costs within fourteen days of entry of final judgment. The final amount of approved fees and costs will then be determined.

## IV.    CONCLUSION

For the foregoing reasons, it is **ORDERED** that Joe Hand's Motion for Final Summary Judgment is **GRANTED**.

**IT IS THEREFORE ORDERED** that Defendant Connie M. Johnson, d/b/a The Waterhole Bar and Grill and d/b/a Watering Hole, is directly liable for violation of 17 U.S.C. § 101, et seq;

**IT IS FURTHER ORDERED** that Joe Hand Promotions, Inc. is entitled to just statutory damages in the amount of $3,700.00; and

**IT IS FURTHER ORDERED** that Joe Hand Promotions, Inc. is entitled to recovery of attorneys' fees and costs in an amount to be later determined.

SIGNED this 9th day of August, 2022.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE